2023 IL App (1st) 221565-U

No. 1-22-1565

THIRD DIVISION
December 27, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 92 CR 24548 |
| | ) | |
| PAUL LEE, | ) | Honorable |
| | ) | Neera Lall Walsh, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE D. B. WALKER delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the second-stage dismissal of defendant's successive postconviction petition where it failed to make a substantial showing of defendant's constitutional claims.

¶ 2    Defendant Paul Lee appeals the dismissal of his second successive postconviction petition at the second stage. On appeal, defendant contends that the dismissal was error where his petition made a substantial showing that (1) the trial court failed to sufficiently consider his age as a mitigating factor, or his potential for rehabilitation, before sentencing him to life in prison without

parole; and (2) his sentence for a crime he committed when he was 17 years old violated the proportionate penalties clause of the Illinois constitution. For the following reasons, we affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4      After a trial, the jury found defendant guilty of first degree murder, aggravated criminal sexual assault, criminal sexual assault, and aggravated kidnapping. The trial court sentenced defendant to natural life in prison without parole for first degree murder, and to terms of 30 years each for the criminal sexual assault and aggravated kidnapping convictions, to be served concurrently. The background of this case is set forth in our order on direct appeal. See *People v. Lee*, No. 1-94-2604 (Nov. 22, 1996) (unpublished order under Illinois Supreme Court Rule 23). The following facts are relevant to our disposition in this appeal.

¶ 5       On September 30, 1992, a woman's nude body was discovered in a garbage cart in the alley on the 7700 block of South Bishop in Chicago, Illinois. The victim had a deep cut to her neck as well as lacerations in her torso. She also had ligature marks on her wrists and ankles. The victim was later identified as Sandra Chorba, a 30-year old woman employed by People's Gas. The garbage cart was registered to a residence at 7648 South Loomis. Defendant resided at 7646 South Loomis.

¶ 6      At trial, Barbara Haney testified that on September 30, 1992, around 2:30 p.m., she observed defendant pulling a black city garbage cart along Loomis. She knew defendant from the neighborhood. They said "hello" to each other and defendant commented on the nice weather. Haney walked with defendant on the sidewalk and as they walked, the cart rolled into a hole. As

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

defendant tilted the cart in order to pull it out of the hole, Haney noticed a greasy red substance "dripping out of the bottom."

¶ 7    A police officer approaching defendant's house from the alley observed an open door on the side of the garage. When he looked through the door, he saw a large pool of blood and white surgical gloves lying across a metal rod. Defendant appeared from behind the officer and said that he did not "know anything about what's in the garage." Defendant was subsequently placed in a police vehicle and taken to the area where Chorba's body was found. A detective who spoke with defendant noticed what appeared to be blood on defendant's shoes.

¶ 8    At the police station, defendant told detectives that he had parked Chorba's People's Gas vehicle in the alley at 77th Street and Ashland Avenue, and he threw the keys under a bush between Bishop and Loomis. Defendant stated that Chorba's vehicle was initially parked in front of his house, but he moved it to avoid suspicion from his neighbors. Detectives later recovered the vehicle and the keys. At defendant's house, they recovered women's underwear and other clothing, as well as a kitchen knife that appeared to have blood on it. Behind the refrigerator, detectives found Chorba's People's Gas employee card, her driver's license, and her telephone calling card.

¶ 9    Defendant gave a handwritten statement to an assistant state's attorney. Defendant stated that he was at home around noon when the "gas lady arrived to turn on the gas." Defendant expected a person from People's Gas at the house for this purpose. Defendant followed Chorba to the basement as she checked on the furnace. He "noticed she had a nice straight a** and decided he was going to rape her." After they returned upstairs, Chorba "start[ed] to leave" so defendant grabbed her and dragged her into the house.

¶ 10    Defendant threw Chorba down on her stomach and told her not to scream or he would kill her. He "hog tied" her feet to her hands and shoved a sock into her mouth. Defendant then "picked

her up and put her in a garbage can," which he dragged to the garage. When he dropped her out of the garbage can, Chorba "start[e]d to get feisty" so he "lifted her and slammed her head against the concrete floor." Chorba was bleeding and "was no longer feisty." Defendant removed her clothes and put her in the truck in the garage. He tied her up again because he had untied her to remove her clothes. Defendant "f***** her for about 15 minutes because he hadn't had sex in about 4 weeks."

¶ 11    Afterwards, defendant stabbed Chorba in the stomach with a sharp object. He then found a rusty razor blade in the truck and "cut her with that to make it look [like] somebody really murdered her." Defendant "had to saw her neck with the blade, but it finally cut her open." He took the gag out of her mouth because she was making sounds like she was vomiting or gasping for air. He knew she was dead when she stopped making sounds.

¶ 12    Defendant returned to his house and called his mother to tell her the "gas lady" had come and gone. He washed his hair and changed his clothes. He then decided to "get rid" of her body. He put her clothes in his brother's room and put her identification card behind the refrigerator. Defendant placed the body in a garbage can which he pulled down Loomis before leaving it in the alley. He also disposed of the razor blade and sharp object he used to cut Chorba. The police arrived about an hour after he returned home.

¶ 13    An autopsy revealed that Chorba sustained multiple injuries from a sharp instrument such as a knife, as well as several blunt trauma injuries. An internal examination revealed soft tissue hemorrhages indicating trauma or penetration in the vaginal region. The medical examiner concluded that Chorba died from strangulation with multiple incise and stab wounds contributing to her death.

¶ 14    The jury found defendant guilty of first degree murder, aggravated criminal sexual assault, aggravated kidnapping, and criminal sexual assault.

¶ 15    Defendant's presentence investigation report (PSI) stated that he was born on February 11, 1975, making him 17 years old when he committed the murder. His mother was the primary caregiver and defendant had a close relationship with her and with his older brother. His mother married a man who was a "father figure" to defendant. Defendant had a good relationship with his stepfather until defendant reached the age of 17. His stepfather became jealous of defendant's close relationship with his mother and brother, and his mother eventually kicked his stepfather out of the house.

¶ 16    The PSI also noted that defendant drank alcohol between the ages of 14 and 16, but he denied using alcohol after age 16. Defendant reported that he was in good mental health and denied any prior psychological treatment. After a court-ordered psychological evaluation, defendant was found fit to stand trial. In high school, defendant received poor grades "because of poor attendance." He was also suspended three or four times for "gang related fighting." His stepfather took him out of school so defendant could help with his window washing business. Although defendant enrolled in a GED program, he did not complete it.

¶ 17    In aggravation, the State emphasized that defendant had tortured and raped Chorba before killing her. Defendant's actions did not indicate that he lost control or snapped. The State described defendant's conduct as "exceptionally brutal or heinous," and if defendant had been 18 years old, it would have sought the death penalty due to the intentional infliction of torture on the victim. Defendant has also shown no remorse. The State requested a sentence of "natural life without the possibility of parole."

¶ 18    In mitigation, defense counsel asked the court to consider that defendant "is a young man" who was 17 years old when the offense occurred. Defendant "had no background, no contact, \*\*\* absolutely zero contact with either the juvenile system or the adult system." Counsel further argued that defendant "doesn't think right." The manner in which the crime occurred reflected "a person who is not thinking, who's out of their mind, maybe not legally." His mind "is just mush." Counsel noted defendant's poor grades and poor attendance in school, which indicated "problems happening in this young man's head back then that didn't take him to violence but it's just like a time bomb. \*\*\* And then it finally exploded." Counsel asked the court to consider whether a term of years would be sufficient, "considering all the circumstances, considering this young boy."

¶ 19    Before imposing defendant's sentence, the trial court stated:

"I've reflected very carefully upon [counsels'] remarks. I've considered the statutory factors in aggravation and mitigation attendant here. I've read and I'm thoroughly conversant with the amended presentence investigation. \*\*\* I reflected upon the age of Mr. Lee. I reflected upon his potential for rehabilitation. And I've considered the gravity of the offenses for which the defendant stands convicted. The Court is well aware of an appropriate sentence in this case [that] would also hopefully be deterrence to others from committing crimes against public servants such as Miss Chorba. My sentence is based upon all of those factors.

Mr. Lee, I'm going to ask that you rise and your attorney kindly rise. Mr. Lee, you stand before me convicted of singularly brutal crimes. I've not seen a scintilla of remorse on your behalf. And notwithstanding your age and it's a fact that I very carefully considered I regard you as a very dangerous person. I think the public must be protected from you, Mr. Lee."

The court sentenced defendant to natural life in prison without the possibility of parole for first degree murder, and 30 years each for aggravated criminal assault and aggravated kidnapping, to run concurrently with the natural life sentence.

¶ 20    Defendant appealed, arguing that the trial court erred in denying his pretrial motion to quash his arrest and suppress evidence. This court affirmed defendant's conviction and sentence. *Lee*, No. 1-94-2604 (Nov. 22, 1996) (unpublished order under Illinois Supreme Court Rule 23). Defendant filed his first *pro se* postconviction petition on May 2, 1997. This court affirmed and granted appellate counsel's motion to withdraw pursuant to *Pennsylvania v. Finley*, 107 S. Ct. 1990 (1987). See *People v. Lee*, No. 1-97-2746 (June 19, 1998) (unpublished order under Illinois Supreme Court Rule 23).  Defendant then filed a *pro se* motion for "Production of Reports, Court Orders and Scientific Tests,"  which the trial court denied on March 10, 1998. This court affirmed and granted counsel's motion to withdraw under *Finley*. See *People v. Lee*, No. 1-98-1238 (April 16, 1999) (unpublished order under Illinois Supreme Court Rule 23).

¶ 21    Several filings followed challenging defendant's sentence. He filed a *pro se* motion alleging that his sentence should be reduced "because of the age, lack of education and poor social environment at the time of [defendant's] offense." The circuit court denied the motion on April 20, 2000. On August 8, 2000, defendant filed a *pro se* successive postconviction petition alleging that his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). At oral argument, defense counsel argued that a natural life sentence was unnecessary where defendant was 17 years old at the time of the offense and he had a clean record until that time. The court reviewed the record and found that the sentencing court took defendant's age into consideration and reflected on his potential for rehabilitation. Therefore, defendant's sentence of natural life in prison for first degree murder was appropriate. However, the court reduced defendant's aggravated kidnapping sentence

to 15 years based on the statutory language. The circuit court granted the State's motion to dismiss the petition. This court affirmed the judgment and granted counsel's motion to withdraw. See *People v. Lee*, No. 1-07 2305 (Jan. 12, 2009) (unpublished order under Illinois Supreme Court Rule 23).

¶ 22   On July 25, 2012, defendant filed a *pro se* petition pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)), alleging that his sentence was void because the trial court made no finding that he committed a brutal or heinous murder indicative of wanton cruelty. The circuit court dismissed the petition on *res judicata* grounds because defendant had challenged his sentence in a prior postconviction petition, and the court had ruled on the issue. On appeal, defendant argued only that the dismissal should be vacated because he failed to properly serve the State with his section 2-1401 petition. This court found that the State had actual notice and thus waived personal jurisdiction. We reasoned that the defendant should not "benefit from his own malfeasance in improperly serving the State." *People v. Lee*, 2014 IL App (1st) 123233-U, ¶¶ 41, 48.

¶ 23   On April 23, 2013, defendant filed a motion for leave to file a second successive *pro se* postconviction petition, the one at issue in this appeal. Therein, he alleged 1) ineffective assistance of trial counsel, and 2) his life sentence was unconstitutional under *Miller v. Alabama*, 132 S. Ct. 2455 (2012). The circuit court granted defendant leave to file his petition and appointed counsel. Defendant, who received a paralegal certificate while incarcerated, moved to discharge counsel and represent himself. After admonishing defendant, the court granted his motion. Defendant later submitted supplements and amendments to his petition, but the court informed him that he was required to obtain leave to file those documents. Defendant withdrew the additional filings and the State moved to dismiss the petition. On December 7, 2015, the circuit court granted the motion.

¶ 24    On July 11, 2019, this court entered an agreed order vacating the dismissal of defendant's second successive petition and remanding the matter "for further second stage postconviction proceedings, including the appointment of counsel and compliance with Rule 651(c), and an opportunity for the parties to litigate, and the Circuit court to consider, the application of *People v. Holman*, 2017 IL 120655 and *People v. Buffer*, 2019 IL 122327, to this case."

¶ 25    On remand, the circuit court appointed counsel who filed a "Supplemental Petition for Post-Conviction Relief." The supplemental petition expanded on the *Miller* claim and further argued that defendant's sentence should be considered under the proportionate penalties clause of the Illinois constitution, "which affords broader protection than the Eighth Amendment." Defendant filed a supplemental petition *pro se* in which he also expanded on his *Miller* claim.

¶ 26    The State filed an amended motion to dismiss defendant's second successive petition, arguing that defendant failed to establish cause and prejudice regarding his ineffective assistance claim, and defendant's sentence was constitutional because the court considered evidence of his youth presented in the PSI, as well as the mitigation evidence presented at his sentencing hearing.

¶ 27    The circuit court held a hearing on the successive petition. The State informed the court that "this is a successive petition, and the State did not have any presence during the evaluation of the cause and prejudice test that was done, it is the first time that the State can make [an] argument as to the cause and prejudice, and the State does do it."

¶ 28    At the hearing, defense counsel argued that the sentencing court did not effectively consider defendant's youth and the attendant characteristics because at the time of sentencing, the science regarding brain development, which was a component of *Miller*, had not been explored. Counsel also argued that the proportionate penalties clause applied and that the pleadings in the petition referred to cases involving that provision.

¶ 29    In response, the State argued that defense counsel "talks about also having raised a proportionate penalties claim in this matter," but as an applied challenge, counsel should have then presented an expert report demonstrating why defendant's sentence was unconstitutional as applied to him. Counsel did not do so. The State contended that defendant "commingled" his proportionate penalties claim with his *Miller* sentencing claim.

¶ 30    On September 27, 2022, the circuit court granted the State's motion to dismiss. The court's order noted that defendant sought relief on the following grounds: 1) ineffective assistance of trial counsel; 2) his sentence was unconstitutional as applied to him pursuant to *Miller*; and 3) his sentence was unconstitutional as applied to him pursuant to the Illinois proportionate penalties clause. Relevant to this appeal, the court found that although the sentencing court "did not have the benefit of the *Miller v. Alabama* opinion at the time of [defendant's] original sentencing hearing, the court considered various factors before imposing sentence." The sentencing court was well-aware of defendant's age, and it carefully considered the *Miller* factors even if it "did not have the foresight to expressly state each *Miller* factor." Furthermore, the sentencing court expressly stated that it "balanced [defendant's] potential for rehabilitation against deterrence and the public's interest in safety from [defendant.]" It found that defendant committed "singularly brutal crimes," and he was a very dangerous person.

¶ 31    The circuit court noted that the sentencing court sentenced defendant to natural life in prison without parole after "thoughtful consideration of [his] potential for rehabilitation" and his circumstances. The circuit court therefore found that defendant "failed to make a substantial showing of a constitutional violation pursuant to" *Miller* and *Buffer*, or under the proportionate penalties clause of the Illinois constitution.

¶ 32    Defendant filed this appeal.

¶ 33                                    II. ANALYSIS

¶ 34    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) is a "legislative creation" that allows an incarcerated defendant to assert a substantial violation of his constitutional rights at trial. *People v. Bailey*, 2017 IL 121450, ¶ 17. A postconviction proceeding is not a substitute for a direct appeal but instead "offers a mechanism for a criminal defendant to assert a collateral attack on a final judgment." *People v. Robinson*, 2020 IL 123849, ¶ 42. "The purpose of a postconviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal." *People v. English*, 2013 IL 112890, ¶ 22.

¶ 35    The Act contemplates the filing of a single petition. 725 ILCS 5/122-3 (West 2020). Therefore, a defendant must obtain leave of court to file a successive petition. *Id*. 5/122-1(f). To obtain leave, a defendant must demonstrate cause for failure to raise the claim in the initial postconviction petition and resulting prejudice. *Id*. The cause-and-prejudice test for successive petitions applies to individual claims, not to the petition as a whole. *People v. Pitsonbarger*, 205 Ill. 2d 444, 462 (2002). Accordingly, a defendant must establish cause and prejudice as to each claim asserted in a successive petition. *Id*. at 463.

¶ 36    Proceedings under the Act are divided into three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). At the first stage, the trial court may dismiss a postconviction petition that is "frivolous or *** patently without merit." 725 ILCS 5/122–2.1(a)(2) (West 2020). If the trial court does not dismiss the petition, it advances to the second stage where the defendant must make a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 33. Such a showing is made when the petition's well-pled allegations, if proven at an evidentiary hearing, would entitle the defendant to relief. *Id.* ¶ 35. The State may file a motion to dismiss or answer the

petition at the second stage. 725 ILCS 5/122–5 (West 2020). If the petition is not dismissed at the second stage, it "advances to the third stage, where the circuit court conducts an evidentiary hearing before deciding whether to grant relief." *Bailey*, 2017 IL 121450, ¶ 18.

¶ 37 The circuit court below dismissed defendant's successive postconviction petition at the second stage. We review the dismissal of a successive postconviction petition without a third-stage evidentiary hearing *de novo*. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). Under the *de novo* standard, we review the circuit court's judgment rather than its reasoning, and we may affirm on any basis supported by the record. *People v. Anderson*, 401 Ill. App. 3d 134, 138 (2010).

¶ 38 On appeal, defendant initially argued that he made a substantial showing of a constitutional violation where *People v. Holman*, 2017 IL 120655 required the sentencing court to find him "permanently incorrigible" before sentencing him to life in prison without parole, but it did not do so.[2] In his reply brief, defendant acknowledged that our supreme court recently overruled *Holman* in *People v. Wilson*, 2023 IL 127666. He contends, however, that *Wilson* still requires the sentencing court to consider youth as a mitigating factor. Defendant argues that the court's "brief articulation" of its considerations showed that it did not sufficiently consider his youth as a mitigating factor in violation of the Eighth Amendment.

¶ 39 As support, defendant cites *People v. Morris*, 2017 IL App (1st) 141117. In *Morris*, the appellate court found that although the trial court commented on the defendant's youth and upbringing, the court appeared to give his prior bad conduct great weight and it was "not apparent from the record that the trial court carefully considered defendant's youthful characteristics against those aggravating factors" before sentencing him to an effective life sentence of 100 years. *Id.* ¶ 32.

---

[2] Defendant does not challenge the dismissal of his ineffective assistance of counsel claim on appeal.

The appellate court reasoned that "[b]y sentencing defendant to 100 years in prison, the trial court made the ultimate decision that defendant, at the age of 16, was permanently incapable of change." *Id.* ¶ 33. The defendant's sentence was vacated, and the case was remanded for resentencing where the trial court could determine whether his crime reflected " 'irreparable corruption.' " *Id.* ¶ 33.

¶ 40    In *Morris*, the primary concern was whether the trial court properly found the defendant permanently incorrigible because the appellate court believed such a finding was required for his sentence to comply with *Miller* and *Montgomery*. Another case cited by defendant, *People v. Cavazos*, 2020 IL App (2d) 120171-B, remanded the matter for similar reasons. The appellate court instructed that on remand, the sentencing court must do more than mention the *Miller* factors. *Id.* ¶ 25. Instead, the court must "*use* those factors to evaluate evidence at the new sentencing hearing to determine whether defendant is 'among the rarest of juvenile offenders whose conduct places him [or her] beyond the possibility of rehabilitation.' " (Emphasis in original.) *Id.* (quoting *Holman*, 2017 IL 120655, ¶ 46).

¶ 41    After *Morris* and *Cavazos* were decided, our supreme court acknowledged that *Holman* was no longer viable in light of *Jones v. Mississippi*, 141 S. Ct. 1307 (2021). In *Jones*, the United States Supreme Court held that a juvenile may be sentenced to life in prison without parole so long as the sentence was imposed at the court's discretion. *Id.* at 1313. "[A] State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient." *Id.* The Court reasoned that "if the sentencer has discretion to consider the defendant's youth, the sentencer necessarily *will* consider the defendant's youth, especially if defense counsel advances an argument based on the defendant's youth." (Emphasis in original.) *Id.* at 1319. Unless the sentencing court "expressly refuses as a matter of law to consider the defendant's youth *** , a

discretionary sentencing scheme, in itself, satisfies *Miller*'s requirement that sentencing courts account for youth and its attendant circumstances." *Id.* at 1320.

¶ 42    Our supreme court noted that under *Jones*, "neither a finding of permanent incorrigibility nor an on-the-record sentencing explanation is constitutionally required before a juvenile may be sentenced to life without parole." *Wilson*, 2023 IL 127666, ¶ 38. Therefore, the holding in *Holman* was "*directly* at odds with the holding in *Jones* ***." (Emphasis in the original.) *Id.* ¶ 42. Following *Jones'* interpretation of this constitutional issue, the supreme court overruled *Holman*. *Wilson*, 2023 IL 127666, ¶ 42. *Morris* and *Cavazos*, which were decided prior to *Jones* and *Wilson*, are not persuasive authority here.

¶ 43    The record shows that defense counsel presented defendant's youth as mitigating evidence before the sentencing court. Evidence presented "in mitigation" means that the evidence is being offered on behalf of defendant to reduce his sentence. See *People v. McNeal*, 175 Ill. 2d 335, 369 (1997). The State need not agree with defendant, and "may contest during the sentencing hearing the significance or weight of [his] evidence presented in mitigation and disagree with [his] assessment of the nature and character of it." *Id.* In arguing that the sentencing court failed to properly consider his youth as a mitigating factor, defendant is essentially challenging the weight given that factor by the court.

¶ 44    "It is well settled that the trial court has broad discretionary powers in imposing a sentence." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Reviewing courts defer to the trial court's sentencing decisions because the trial court "has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Id.* Accordingly, we review the propriety of sentences "with great caution and care," and will not substitute our judgment for that of the trial court merely because we would have weighed

the factors differently. *People v. Streit*, 142 Ill. 2d 13, 19 (1991). Defendant's youth was one factor for the sentencing court to consider in this case, albeit an important one. As long as the court did not expressly refuse as a matter of law to consider defendant's youth (see *Wilson*, 2023 IL 127666, ¶¶ 38, 44), we should not depart from established law to scrutinize precisely how it balanced the relevant factors and substitute our judgment in the process.

¶ 45    We also disagree with defendant that deterrence is an invalid factor which a court cannot consider when sentencing a juvenile offender. Although deterrence may be "diminished in juvenile sentencing because juveniles' recklessness, immaturity, and impetuosity make them less likely to consider possible punishment" (*Morris*, 2017 IL App (1st) 141117, ¶ 33), the Supreme Court did not foreclose deterrence as a consideration altogether. See *People v. Smith*, 2022 IL App (4th) 200666, ¶ 28. Sentencing courts, however, should not place undue emphasis on deterrence with little or no consideration of the defendant's youth and its attendant characteristics. See *People v. McKinley*, 2020 IL App (1st) 191907, ¶ 89 (finding that the trial court gave improper weight to deterrence when it stated that "the sentence must deter future criminal conduct").

¶ 46    In the case at bar, the sentencing court stated that it considered the statutory aggravating and mitigating factors and was "thoroughly conversant" with the information in defendant's PSI. It "very carefully considered" defendant's age and his potential for rehabilitation. Although the court considered defendant's youth, it also found that he was "convicted of singularly brutal crimes." The court determined that, notwithstanding defendant's age, he was "a very dangerous person" and "the public must be protected" from him. After addressing these factors, the court remarked that "an appropriate sentence in this case would also *hopefully* be [a] deterrence to others from committing crimes against public servants." (Emphasis added.) Unlike *McKinley*, the court did not make deterrence the overriding factor in sentencing defendant.

¶ 47 Since the court considered defendant's youth before imposing a discretionary life sentence, we find that defendant's sentence complied with *Miller*, even if the court may have ultimately found that his youth was "outweighed by other factors" or "deem[ed] defendant's youth to be an insufficient reason to support a lesser sentence under the facts of the case." (Internal quotation marks omitted.) *Id.* ¶ 38 (quoting *Jones*, 141 S. Ct. at 1320). As a result, defendant's petition did not make a substantial showing that his sentence violated the Eighth Amendment.

¶ 48 Defendant next argues that his successive petition made a substantial showing that his sentence violated the proportionate penalties clause of the Illinois constitution. The proportionate penalties clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A sentence violates the clause if it is "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 338 (2002). What constitutes a cruel or degrading sentence has not been defined because "as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community." *Id.* at 339. To determine whether defendant's sentence is disproportionate, "[w]e review the gravity of the defendant's offense in connection with the statutorily mandated sentence within our community's evolving standard of decency." *Id.* at 340.

¶ 49 The State argues on appeal that defendant has not shown cause as to the proportionate penalties issue. Defendant contends that the State forfeited any opportunity to argue whether he showed cause because the State failed to challenge the cause element before the circuit court.

¶ 50 It is arguable whether the State forfeited this issue below. At the hearing, the State informed the circuit court that it would challenge defendant's petition on cause-and-prejudice grounds. Furthermore, the State may not have separately challenged cause as to defendant's proportionate

penalties claim because it believed he had "commingled" the issue with his *Miller* claim and was not raising a separate claim.

¶ 51 Even if the State had conceded cause as to the claim, "it is well established that we, as a court of review, are not bound by a party's concession." *People v. Carter*, 2015 IL 117709, ¶ 22. Therefore, we will consider whether defendant established cause for his claim. See *People v. Johnson*, 2019 IL App (1st) 153204, ¶ 37 (reviewing whether the defendant established cause for one of his claims, even though the circuit court ruled on his petition at the second stage but made no express finding as to cause on that claim).

¶ 52 Defendant argues that he has established cause based on the legislative enactment of a new parole statute for offenders under 21 years of age. See 730 ILCS 5/5-4.5-115 (West 2020). He contends that although the statute does not apply retroactively to him, it reflects an evolving standard of decency in Illinois "that steers decisively away from imposing a life sentence without the possibility of parole for a defendant who commits a crime when under 21 years old." Since this provision was enacted in 2020, it was unavailable when he filed his earlier petitions.

¶ 53 Section 5-4.5-115 provides, in relevant part, that "[a] person under 21 years of age at the time of the commission of first degree murder who is sentenced on or after June 1, 2019 (the effective date of Public Act 100-1182) shall be eligible for parole review by the Prisoner Review Board after serving 20 years or more of his or her sentence or sentences." *Id*. 5-4.5-115(b). After the parties submitted their briefs in this appeal, our supreme court addressed whether section 5-4.5-115 represented a shift in society's evolving standard of decency. See *People v. Hilliard*, 2023 IL 128186.

¶ 54 In *Hilliard*, the 18-year-old defendant filed a postconviction petition challenging the mandatory 25-year firearm enhancement to his sentence as violating the Eighth Amendment and

the proportionate penalties clause as applied to him. *Id.* ¶ 11. He argued that the court should view his proportionate penalties claim in light of new legislation, including section 5-4.5-115, that showed an evolving standard of decency. *Id.* ¶ 36. The supreme court, however, was not persuaded by the defendant's argument. *Id.* ¶ 38. It found that:

> "Notably, \*\*\* the legislature chose not to make the provision retroactive, such that the provision does not apply to defendant. The legislature's decision not to broaden the statute's reach to *all* defendants under 21 shows that it was implementing the legislation as a policy change rather than a reflection that the previous statutory scheme was abhorrent to the community's moral sense. Accordingly, the legislative changes do not aid defendant's position." (Emphasis in the original.) *Id.* ¶ 39.

Following *Hilliard*, we find that section 5-4.5-115 does not provide cause for defendant's failure to raise his as-applied proportionate penalties claim in a prior postconviction petition. See *People v. Dorsey*, 2021 IL 123010, ¶ 74 (noting that "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing").

¶ 55    As defendant has not made a substantial showing that his sentence violated the Eighth Amendment or established cause regarding his proportionate penalties claim, we affirm the circuit court's dismissal of his second successive postconviction petition.

¶ 56                                III. CONCLUSION

¶ 57    For the foregoing reasons, we affirm the circuit court's dismissal of defendant's second successive postconviction petition.

¶ 58    Affirmed.